Michael Lee (WL 6353)
Lee Law PLLC
579 Fifth Avenue
14th Floor
New York, NY 10017
Telephone: (212) 621-8239
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLAPLEX, LLC and LIQWD, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WISE PROPER HOLDINGS INC; STEVEN WEISS, all individually and d/b/a "ESWEIN INCORPORATED" and "RECYCLING CONGLOMERATE LLC "; "JOHN DOES" 1-10; and UNKNOWN ENTITIES 1-10;<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT** |

Plaintiffs OLAPLEX, LLC (hereinafter "OL") and LIQWD, INC. (hereinafter "LI") (OL and LI are hereinafter collectively referred to as "Plaintiffs") by and through their attorneys of record, complaining of defendants Wise Proper Holdings Inc.; Steven Weiss, all individually and d/b/a "Eswein Incorporated" and "Recycling Conglomerate LLC"; "John Does" 1- 1; and Unknown Entities 1-10 hereinafter collectively referred to as "Defendants") hereby allege as follows:

## STATEMENT OF THE CASE

1. Plaintiffs manufacture, distribute, and sell a professional hair care product that creates and reconnects bonds in the hair. Plaintiffs' kits are not sold to individuals but rather to licensed hair care professionals. Specifically, Olaplex Hair Perfector No. 3 is a take-home product that is sold to consumers by their hairstylist, online at Olaplex.com, or in select high-end retail stores like Sephora and Nordstrom.

2. Plaintiffs' products are sold in more than 80 countries around the world. Since its inception, Plaintiffs' products were an instant success and have revolutionized the hair industry. Leaders in the hair industry have even referred to them as "game changing," "revolutionary," and a "miracle product" that is the "holy grail of hair product[s]."

3. Unfortunately, with Olaplex's success has come the unauthorized imitation of its products in the form of counterfeiting of LI's federally registered trademarks. Specifically, sordid businesses and individuals create unauthorized product and distribute it under the Olaplex name and using the Olaplex trademarks. Routinely called "counterfeits", these illegal goods are made to appear to be genuine Olaplex products, but they are not.

4. The consequences of these unauthorized products in the marketplace that have not undergone the strenuous quality control of Olaplex not only harm Olaplex and its goodwill but serves as a public health hazard to any unsuspecting user. Especially with sales on the Internet, many people get confused to think that these products are genuine but instead they pose the risk of serious harm.

5. This action concerns the offer for sale, sale, and other distribution of merchandise bearing counterfeits and infringements of LI's federally registered trademarks in the United States. As described more fully below, Defendants are actively working together and have conspired knowingly and intentionally to distribute and sell counterfeit merchandise. By doing so, Defendants have willfully infringed LI's valuable trademarks, creating a strong likelihood of confusion among consumers who expect that merchandise bearing LI's trademarks will be genuine Olaplex product and causing both monetary and other irreparable injury to Plaintiffs.

## PARTIES

6. Plaintiff OL is a limited liability company organized and existing under the laws of the State of California, having its principal place of business at 1482 E. Valley Rd., Suite #701, Santa Barbara, California 93108.

7. Plaintiff LI is a corporation organized and existing under the laws of the State of California, having its principal place of business at 1482 E. Valley Rd., Suite #701, Santa Barbara, California 93108. LI is the record owner of the trademarks at issue in the instant action and licenses such trademarks exclusively to its affiliate OL for use and sub- licensing in connection with OL's business.

8. Upon information and belief, Wise Proper Holdings Inc ("Wise Proper") is a New York corporation with its principle place of business located at 1208 Avenue M, Suite 2233, Brooklyn, NY 11230.

9. Upon information and belief, defendant Steven Weiss ("Weiss") is the President, owner, and operator of Wise Proper and therefore has the right and ability to control the actions of the corporate defendant. (Wise

Proper and Weiss are hereinafter collectively referred to as "Defendants")

10. Upon information and belief, Wise Proper and Weiss do business under the fictitious business name "Eswein Incorporated" ("Eswein"). Eswein is an inactive New York corporation with its former principle place of business located at 1208 Avenue M, Suite 2233, Brooklyn, NY 11230. The clandestine operations of Defendants are more evidence of their willful conduct.

11. Upon information and belief, Wise Proper and Weiss also do business under the fictitious business name "Recycling Conglomerate LLC" ("Recycling"). Recycling is fictious business entity that is not authorized to do business in New York with its stated principle place of business located at 1208 Avenue M, Suite 2233, Brooklyn, NY 11230. The clandestine operations of Defendants are more evidence of their willful conduct.

12. The identities of "John Does" 1-10 and Unknown Entities 1-10 are not currently known to Plaintiffs. Upon information and belief, they are associated with Defendants and have contributed to Defendants' unlawful activities. Plaintiffs will use its best efforts to identify these "John Does" and Unknown Entities, and upon further knowledge and investigation, Plaintiffs will amend its pleadings accordingly.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over the federal claims pursuant to the Copyright Act (17 U.S.C. §§ 101 et seq.), 28 U.S.C. §§ 1331 and 1338 and the Declaratory Judgment Act (28 U.S.C. § 2201). This court has supplemental subject matter jurisdiction over state law claims pursuant to 28 U.S. C. § 1367(a) in that the state law claims form part of the same case or controversy as the federal claims.

14. Defendants are subject to the Court's jurisdiction because they have committed the acts complained of herein in this District, do business in this District and/or reside in this District. More specifically, Defendants are shipping illicit products from its New York based location to places around the world.

15. Defendants are subject to the jurisdiction of this Court pursuant to and in accordance with Rule 4 of the Federal Rules of Civil Procedure.

16. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

Plaintiffs and the Olaplex Trademarks

17. Since 2014, Plaintiffs have extensively and exclusively sold goods bearing the **OLAPLEX®** trademark throughout the United States. Plaintiffs have the exclusive right to use and reproduce the **OLAPLEX®** trademark. As a result of Plaintiffs' extensive marketing and sales of products bearing the **OLAPLEX®** trademark, the **OLAPLEX®** trademark has acquired considerable value and is well known to the consuming public and trade as identifying and distinguishing Olaplex products.

18. Rights to the **OLAPLEX®** trademark are evidenced in trademark registrations and applications throughout the world, including by the United States Patent and Trademark Office under Registration No. 4,553,436. In addition, Plaintiffs own U.S. Trademark Registration No. 4,557,585 for **BOND MULTIPLIER®** and U.S. Trademark Registration No. 4,682,909 for **BOND PERFECTOR®** (collectively, the "Olaplex

Trademarks"), two of its top-selling hair products the Olaplex Trademarks are valid and subsisting.

19. Plaintiffs' products are sold through a carefully curated network of salons and distributors around the world, as well as on Plaintiffs' own website www.olaplex.com and through select retail partners such as Sephora.

20. Plaintiffs exercise strict quality control over the production, bottling, packaging, and distribution of the products sold under its **OLAPLEX®** trademark. Plaintiffs mark each unit with a product code used as a quality assurance, anti-counterfeiting, and anti-theft measure.

21. In addition, Plaintiffs use QR codes on the labels. Plaintiffs' QR codes store important information about their products and provide consumers the ability to scan the QR code on a smartphone and access Plaintiffs' website for additional information about the product, including the opportunity to purchase more products online or learn information about how to use Olaplex products.

22. With this strict quality control, Plaintiffs ensure that only the highest quality products bearing the Olaplex Trademarks make its way into the hands of consumers. Defendants, however, are willfully acting to destroy the value associated with the Olaplex Trademarks with their illegal activities.

Defendants' Illegal Activities

23. On information and belief, Defendants source, market, advertise, offer for sale, and/or sell in interstate commerce merchandise bearing counterfeits and infringements of the Olaplex Trademarks ("Counterfeit Product").

24. As part of their ongoing illegal enterprise, Defendants purchase and then sell merchandise bearing counterfeits and infringements of the Olaplex Trademarks.

25. On or about October 1, 2018, as part of its ongoing enforcement efforts in attempts to monitor and stop the sale of Counterfeit Product, Olaplex sent a cease and desist letter to a third-party online seller of Counterfeit Product identified as the "J & J Giteau Family Trust".

26. Previously, Plaintiffs discovered product alleged to be "Olaplex Hair Perfector No 3" for sale by the "J & J Giteau Family Trust".

27. On or about October 15, 2018, attorneys for the "J & J Giteau Family Trust" provided information and invoices evidencing that its supplier of the Counterfeit Product was Defendants.

28. The invoices evidence that during 2018, the "J & J Giteau Family Trust" was supplied with a large amount of Counterfeit Product from Defendants. The company listed on the invoices as the supplier is: "Recycling Conglomerate LLC, SW, 1208 Avenue M, 2233, Brooklyn, NY 11230, United States".

29. "Recycling Conglomerate LLC" is a fictious business entity and a doing business as name of Defendants. These surreptitious activities evidence that defendants are acting with knowledge, in bad faith, and willfully to infringe the Olaplex Trademarks.

30. Further, in a May 25, 2018 letter to the "J & J Giteau Family Trust" provided in order to expedite the sale of the Counterfeit Product on Amazon, Weiss claims that Wise Proper was the seller of the Counterfeit Product and claims that the products sold by Defendants were "authentic merchandise direct from the manufacturer". This letter was signed by "Steven Weiss/president (sic))." Further, Defendants provided false invoices

attempting to show that the Counterfeit Product was distributed by Olaplex. All these statements and invoices are fraudulent.

31. These actions and others by Weiss was knowingly fraudulent. First, the product sold by Defendants was not authentic. Second, the product sold by Defendants was not direct from Olaplex. Weiss made these false statements in the attempts to sell his Counterfeit Product and defraud the "J & J Giteau Family Trust", Amazon, and the general public who is being deceived and sold Counterfeit Product.

32. There can be no doubt that Defendants are willfully infringing the Olaplex Trademarks and have tried to cover up such illegal activities by providing fraudulent documents and making fraudulent statements.

33. Upon information and belief, Defendants are working in concert to purchase, offer for sale and sell Counterfeit Product. The full extent of Defendants' illegal activities is not known at this time but the sales to the "J & J Giteau Family Trust" is just the tip of the iceberg of Defendants' illegal activities concerning the Olaplex Trademarks.

34. Defendants are not authorized and never have been authorized by Plaintiffs to alter, produce, manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing the Olaplex Trademarks, or any variations thereof.

35. On information and belief, Defendants source, market, advertise, offer for sale, and/or sell Counterfeit Products in interstate commerce. The Counterfeit Products sold by Defendants bear counterfeit and confusingly similar imitations of the Olaplex Trademarks in a manner likely to be confused with genuine Olaplex products.

36. On information and belief, Defendants are further unlawfully engaged in the business of removing and/or materially altering codes and

other quality control and anti-counterfeiting devices from Olaplex products and introducing them into interstate commerce.

37. Defendants are not authorized and never have been authorized by Plaintiffs to produce, manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing the Olaplex Trademarks, or any variations thereof.

38. Defendants' Counterfeit Products are likely to deceive, confuse and mislead purchasers and prospective purchasers into believing that these unlicensed and unauthorized products are authorized by Plaintiffs. Purchasers and prospective purchasers viewing Defendants' Counterfeit Products and perceiving a defect, lack of quality, or any other irregularity are likely to attribute them mistakenly to Plaintiffs.

39. Defendants are not associated or connected with Plaintiffs, or licensed, authorized, sponsored, endorsed, or approved by Plaintiffs in any way.

40. The likelihood of confusion, mistake, and deception engendered by Defendants' misappropriation of the Olaplex Trademarks is causing irreparable harm to the goodwill symbolized by the Olaplex Trademarks and the reputation for quality that said marks embody, as well as the efficacy of Plaintiffs' anti-counterfeiting efforts.

41. On information and belief, Defendants knowingly, willfully, intentionally, and maliciously adopted and used confusingly similar and/or substantially indistinguishable imitations of the Olaplex Trademarks.

42. Due to the nature of the product at issue here (i.e., a topical hair product), Defendants' sale of the Counterfeit Products poses a serious risk to public health and safety. Thus, Defendants' actions are causing irreparable harm to Plaintiffs and the public by threatening consumer welfare and creating

consumer confusion.

43. Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

44. Unless enjoined by this Court, Defendants intend to continue their course of conduct and will wrongfully use, infringe upon and otherwise profit from the Olaplex Trademarks, and cause injury to Plaintiffs' reputation and business interests.

45. As a direct result of the acts of Defendants alleged herein, Plaintiffs have suffered irreparable damage and have sustained lost profits. Plaintiffs will continue to suffer irreparable damage and sustain a loss in profits until Defendants' actions alleged above are enjoined by this Court.

**FIRST CLAIM FOR RELIEF:**

**TRADEMARK COUNTERFEITING**

**(15 U.S.C. § 1114)**

46. Plaintiffs repeat and re-allege the allegations in the preceding paragraphs of this Complaint.

47. Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the Olaplex Trademarks on goods covered by registrations for the Olaplex Trademarks.

48. Defendants have intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

49. Defendants' use of the Olaplex Trademarks to advertise, promote, offer for sale, distribute and sell goods bearing counterfeits was and is without the consent of Plaintiffs.

50. Defendants' unauthorized use of the Olaplex Trademarks on and

in connection with their advertisement, promotion, sale, offering for sale, and distribution of goods through e-mail and the Internet constitutes Defendants' use of the Olaplex Trademarks in commerce.

51. Defendants' unauthorized use of the Olaplex Trademarks as set forth above is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to believe that Defendants' goods are the same as Plaintiffs' goods and/or that they are authorized, sponsored, or approved by Plaintiffs or that they are affiliated, connected, or associated with or in some way related to Plaintiffs; and (c) enable Defendants to unfairly benefit from Plaintiffs' advertising and promotion and profit from the reputation of Plaintiffs and the Olaplex Trademarks, all to the substantial and irreparable injury of the public, Plaintiffs, and the Olaplex Trademarks and the substantial goodwill represented thereby.

52. Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

53. By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Plaintiffs' election, an amount representing three (3) times Plaintiffs' damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

**SECOND CLAIM FOR RELIEF:**

**TRADEMARK INFRINGEMENT**

**(15 U.S.C. § 1114)**

54. Plaintiffs repeat and re-allege the allegations of paragraphs 1

through 45 of this Complaint.

55. Based on Plaintiffs' extensive advertising under the Olaplex Trademarks, its extensive sales and the wide popularity of Olaplex products, the Olaplex Trademarks have acquired secondary meaning such that any product and advertisement bearing such trademarks is immediately associated by purchaser and the public as being a product and affiliate of Plaintiffs.

56. Defendants' activities constitute Defendants' use in commerce of the Olaplex Trademarks. Defendants use the Olaplex Trademarks in connection with Defendants' sale, offers for sale, distribution, promotion, and advertisement of their goods bearing infringements and/or counterfeits of the Olaplex Trademarks.

57. Defendants have used the Olaplex Trademarks, knowing that they are the exclusive property of Plaintiffs, in connection with their sale, offers for sale, distribution, promotion, and advertisement of their goods bearing counterfeits or infringements of the Olaplex Trademarks.

58. Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned, or authorized by Plaintiffs to use the Olaplex Trademarks to advertise, manufacture, distribute, offer for sale, or sell goods bearing the Olaplex Trademarks when Defendants are not so authorized.

59. Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that they and the goods they sell are in some way sponsored, affiliated, or associated with Plaintiffs, when in fact they are not.

60. Defendants' use of the Olaplex Trademarks has been without the consent of Plaintiffs, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression

that the goods advertised, promoted, distributed, and sold by Defendants are warranted, authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

61. Defendants' unauthorized use of the Olaplex Trademarks has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and profiting from the reputation of Plaintiffs and the Olaplex Trademarks, to the substantial and irreparable injury of the public, Plaintiffs, and the Olaplex Trademarks and the substantial goodwill represented thereby.

62. Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

63. By Reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing three (3) times Plaintiffs' damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF:
## FEDERAL TRADEMARK DILUTION
## (15 U.S.C. § 1125(c))

64. Plaintiffs repeat and re-allege the allegations of paragraphs 1 though 45 of this Complaint.

65. Defendants' use of the Olaplex Trademarks or marks confusingly similar thereto in order to sell their products constitutes Defendants' commercial use in commerce of the Olaplex Trademarks.

66. The Olaplex Trademarks are world famous and distinctive. They achieved such status long prior to Defendants' activities complained of herein.

67. Defendants' use of the Olaplex Trademarks on the Internet to advertise unauthorized merchandise constitutes tarnishment of the Olaplex

Trademarks.

68. Plaintiffs are suffering and will continue to suffer irreparable harm from Defendants' dilutive activities.

69. Defendants' acts as aforesaid are diluting the distinctive quality of the Olaplex Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

70. Defendants have intentionally and willfully appropriated the Olaplex Trademarks and traded on Plaintiffs' reputation.

71. Defendants' wrongful acts of dilution will continue unless enjoined by this Court.

## FOURTH CLAIM FOR RELIEF:

### UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN & FALSE DESCRIPTION (15 U.S.C. § 1125(a))

72. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 45 of this Complaint.

73. In connection with Defendants' advertisement, promotion, distribution, offers of sales, and sales of their goods, Defendants have used the Olaplex Trademarks in commerce.

74. In connection with Defendants' advertisement, promotion, distribution, offers of sales, and sales of their goods, Defendants have affixed, applied and/or used false designations of origin and false and misleading descriptions and representations, including the Olaplex Trademarks, which tend falsely to describe the origin, sponsorship, association, or approval by Plaintiffs of the goods Defendants sell.

75. Defendants have used the Olaplex Trademarks with full knowledge of the falsity of such designations of origin, descriptions, and

representations, all to the detriment of Plaintiffs.

76. Defendants' use of the Olaplex Trademarks on the Internet and on their goods bearing counterfeits and/or infringements of the Olaplex Trademarks constitutes false descriptions and representations tending falsely to describe or represent Defendants and their products as being authorized, sponsored, affiliated, or associated with Plaintiffs.

77. Defendants have used the Olaplex Trademarks on the Internet and on their goods with the express intent to cause confusion and mistake, to deceive and mislead the public, to trade upon the reputation of Plaintiffs and to improperly appropriate to themselves the valuable trademark rights of Plaintiffs. Defendants' acts constitute unfair competition under federal law.

78. Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent their products as those of Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). These acts constitute unfair competition.

## FIFTH CLAIM FOR RELIEF:

### UNFAIR AND DECEPTIVE BUSINESS PRACTICES (N.Y. Gen. Bus. L. § 349)

79. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 45 of this Complaint.

80. The wrongful conduct of Defendants, including but not limited to the distribution of Counterfeit Product, making false statements, and providing false invoices in order to conceal its illegal activity constitutes

materially misleading and deceptive trade practices under New York General Business Law § 349.

81. This wrongful conduct was consumer-oriented within the meaning of Section 349 as it is the intent of Defendants to distribute Counterfeit Product into the marketplace and therefore harm the general consuming public.

82. Because of this deceptive conduct, Plaintiffs have been and will continue to be damaged both monetarily and in ways impossible to remedy through monetary judgment.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that the Court order the following relief:

1. That the Court enter an injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them be enjoined and restrained from:

a. using any counterfeit or infringement of the Olaplex Trademarks to identify any goods not authorized by Plaintiffs;

b. counterfeiting or infringing the Olaplex Trademarks by importing, manufacturing, distributing, selling, offering for sale, advertising, promoting, displaying any products bearing any simulation, reproduction, counterfeit, or copy of the Olaplex Trademarks;

c. using any simulation, reproduction, counterfeit, or copy of the Olaplex Trademarks in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Olaplex

products, or to any goods sold, manufactured, sponsored or approved by, or connected with Olaplex products,

d. making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services provided, products manufactured, distributed, sold or offered for sale, or rented by Defendants are in any way associated or connected with Olaplex products;

e. engaging in any other conduct constituting an infringement of the Olaplex Trademarks, of Olaplex products' rights in, or to use or to exploit, said trademark, or constituting any weakening of Olaplex products' name, reputation and goodwill.

2. Defendants be ordered to recall all products bearing the Olaplex Trademarks or any other indicia confusingly or substantially similar thereof, which have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants.

3. Defendants be ordered to recall all products bearing the Olaplex Trademarks or any other indicia confusingly or substantially similar thereof, which have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants.

4. Defendants be ordered to deliver for impoundment and destruction all merchandise, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationery and/or other materials in the possession, custody, or under the control of

Defendants which are found to adopt or infringe any of the Olaplex Trademarks, or which otherwise unfairly compete with Plaintiffs and their products and services.

5. Defendants be ordered to file with this Court and serve upon Plaintiffs, within thirty (30) days of the entry of the injunction prayed for herein, a report in writing under oath and setting forth in detail the form and manner in which Defendants have complied with said permanent injunction, pursuant to 15 U.S.C. 1116(a);

6. Defendants be ordered to disclose their supplier(s) of the Counterfeit Products and provide all documents, correspondence, receipts, and/or invoices associated with the purchase of the Counterfeit Products.

7. Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint.

8. Plaintiffs be awarded such damages and profits Plaintiffs have sustained as a consequence of Defendants' counterfeiting and infringement of the Olaplex Trademarks and to account for all gains, profits, and advantages derived by Defendants from the sale of their counterfeit and infringing merchandise bearing the Olaplex Trademarks and that the award to Plaintiffs be trebled as provided for under 15 U.S.C. § 1117; alternatively, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each trademark that Defendants have willfully counterfeited and infringed.

9. Defendants be required to pay to Plaintiffs the costs of this action and Plaintiffs' reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint.

10. Plaintiffs be awarded their actual damages and attorneys' fees pursuant to N.Y. Gen. Bus. L. § 349

11. Defendants be required to pay pre-judgment interest on all damages and profits awards.

12. That this Court retain jurisdiction of this action for the purpose of enabling Plaintiffs to apply to this Court at any time for such further orders and interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

13. That pursuant to 11 U.S.C. § 523(a)(6), Defendants be prohibited from a discharge under 11 U.S.C. § 727 for malicious, willful, and fraudulent injury to Plaintiffs.

14. Plaintiffs have such other and further relief as this Court may deem just and equitable.

Dated: Feb 1, 2019

LEE LAW PLLC

Michael Lee
Lee Law PLLC
579 Fifth Avenue
14th Floor
New York, NY 10017
Telephone: (212) 621-8239

Attorneys for Plaintiffs